UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CAPITAL TELECOM ACQUISITION, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MIAMI-DADE COUNTY, a political subdivision of the STATE OF FLORIDA,<br><br>Defendant. | Civil Action No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT**

For its Complaint against Defendant Miami-Dade County (the "County"), Plaintiff Capital Telecom Acquisition LLC ("Capital Telecom"), by and through its undersigned counsel, alleges as follows:

**Nature of the Action**

This action arises out of the unlawful denial by the County of Capital Telecom's application to construct a 100' camouflaged wireless telecommunications facility on property located at 17200 NW 87th Ave., Hialeah, Florida in Miami-Dade County. The County's denial is not supported by substantial evidence contained in a written record, and it effectively prohibits personal wireless service in the vicinity of the proposed facility. Accordingly, the County's denial of Capital Telecom's application violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act" or "Act"). Capital Telecom seeks an injunction from this Court directing the

1

County to grant Capital Telecom's application for the proposed facility in accordance with Capital Telecom's rights under the Communications Act.

Capital Telecom requests expedited treatment of this complaint pursuant to 47 U.S.C. § 332(c)(7)(b)(v).

## Parties

1. Plaintiff Capital Telecom Acquisition, LLC is a Delaware limited liability company authorized to do business in Florida, and registered to accept service with National Corporate Research Ltd. Inc., 115 North Calhoun St., Suite 4, Tallahassee, FL 32301. Capital Telecom constructs, owns, and manages wireless telecommunications facilities that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Florida, and throughout the country.

2. Defendant Miami-Dade County is a political subdivision of the State of Florida.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because of the existence of federal questions arising under the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Communications Act"). The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in Miami-Dade County in the Southern District of Florida.

## Statement of Facts

### Federal Statutory Control of Wireless Siting

5. The Communications Act governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

6. The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Communications Act may seek review in the federal courts, and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

### The Wireless Communications Service Industry

7. Capital Telecom constructs, owns, and manages wireless communications facilities in Florida and elsewhere in the country. Capital Telecom leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers. In providing this valuable service to wireless carriers, Capital Telecom is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with the goals of the Communications Act. Capital Telecom also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

8. Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio

communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. §151. Capital Telecom constructs towers and other wireless facilities that allow wireless carriers to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

9. To provide reliable service to a user, coverage from cell cites must overlap in a grid pattern resembling a honeycomb. If Capital Telecom is unable to construct a cell site within a specific geographic area, the wireless carriers it serves will not be able to provide service to the consumers within that area.

10. To determine where a new wireless facility is required, radio frequency engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cell sites and other factors. For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, there will be no service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

## The Proposed Facility & Application Process

11. Based upon research and analysis by radio frequency ("RF") engineers, T-Mobile USA, Inc. ("T-Mobile") determined that it has a significant gap in its ability to provide reliable service in the area of the County surrounding the proposed site.

12. This gap has been deemed significant by T-Mobile and its radio frequency engineering department and must be remedied in order for T-Mobile to provide service to the targeted area.

13. T-Mobile initially provided Capital Telecom with an area established by its RF engineers, and requested that Capital Telecom develop a wireless communications facility somewhere within that area so that it may remedy its gap in coverage.

14. Capital Telecom then sought suitable properties within the area that were appropriate for a wireless communications facility. An appropriate candidate would have to fill the gap in coverage, comply with local zoning standards, be leasable, and be buildable.

15. After evaluating properties within the applicable search area, Capital Telecom concluded that the subject site at 17200 NW 87th Ave., Hialeah, FL (the "Subject Property") in the County was (1) in the search area; (2) in a zone that permitted wireless communications facilities; (3) had a property owner willing to lease a portion of land for the construction of a wireless communications facility; and (4) was suitable for constructing and maintaining a wireless communications facility.

16. The Subject Property is zoned AU, Agricultural District, which permits wireless communications towers up to 200' in height by Unusual Use permit.

17. Pursuant to the Miami-Dade County Zoning Code, Unusual Use permits are decided upon by the Community Zoning Appeals Board, which takes final action on the applications, on behalf of Miami-Dade County.

18. The relevant Unusual Use review criteria are found in the County's Zoning Code Section 33-311(A)(3)(a), which provides follows:

> Hear application for and grant or deny unusual uses for Wireless Supported Service Facilities, which by the regulations are only permitted upon approval after public hearing; provided the applied for use, in the opinion of the Community Zoning Appeals Board, would not have an unfavorable effect on the economy of Miami-Dade County, Florida, would not generate or result in excessive noise or traffic, cause undue or excessive burden on public facilities, including water, sewer, solid waste disposal, recreation, transportation, streets, roads, highways or other such facilities which have been constructed or which are planned and budgeted for construction, are accessible by private or public roads, streets or highways, tend to create a fire or other equally or greater dangerous hazards, or provoke excessive overcrowding or concentration of people or population, when considering the necessity for and reasonableness of such applied for use in relation to the present and future development of the area concerned and the compatibility of the applied for use with such area and its development, provided that:
>
> i.
>
>   The applicant shall demonstrate that the proposed Wireless Supported Service Facility will cure:
>
>   a.
>
>     signal interference problems; or
>
>   b.
>
>     the applicant's lack of wireless service coverage or capacity in the area intended to be served by the proposed Wireless Supported Service Facility
>
> ii.
>
>   The applicant shall provide information to permit independent verification of factual data relied upon by the applicant to establish 3(a)(i) above, including, but not limited to the following:
>
>   a.
>
>     the purpose for the proposed Wireless Supported Service Facility; and
>
>   b.
>
>     the following technical data for the proposed Wireless Supported Service Facility and for each existing, authorized, pending and proposed adjacent facility:
>
>     i.
>
>       site name or other reference;
>
>     ii.
>
>       facility latitude and longitude;
>
>     iii.

      site elevation;

   iv.

      for each antenna at each of the included facilities:

     1.

      height of antenna radiation center;

     2.

      antenna type and manufacturer;

     3.

      maximum effective radiated output power, including the maximum total power radiated from all channels;

     4.

      azimuth of main antenna lobe; and

     5.

      beam tilt and null-fill of each antenna.

  c.

   a complete up- and down-link power budget for the proposed Wireless Supported Service Facility, including any differences that may exist with the power budgets of the adjacent facilities, to ensure that all of the gain and loss factors used by the applicant are included in a verification analysis.

  d.

   complete descriptions of methodology, formulas, data presented in appropriate parameter data units (e.g., Erlangs, Watts, dBm, ft.), existing traffic studies and trend analyses if the proposed facility is intended to cure a lack of capacity, and any other information necessary for an independent engineer to verify statements concerning signal interference or lack of capacity or coverage; and

  e.

   identification of any equipment that differs from industry standards.

 iii.

  that the applicant shall reimburse the department for fees charged to the department for independent verification of factual data relied upon by the applicant, as required pursuant to paragraph 3 a ii above.

Miami-Dade County Code § 33-311(A)(3)(a).

  19. Capital Telecom agreed to lease terms with Iglesia Buatista Nuevo Amanecer, Inc., the owner of the Subject Property, and Iglesia Bautista authorized Capital Telecom to act as its agent and apply for the necessary permits to construct a wireless facility on the Subject Property.

20. In February 2016 Capital Telecom submitted its Application to construct a 100' camouflaged cell tower with associated equipment in an approximately 2,475 square foot compound (the "Proposed Facility") on the Subject Property.

21. The Subject Property is approximately 5.3 acres, and is developed as a religious facility known as New Dawn Church.

22. The Proposed Facility is designed to remedy the significant gap in coverage currently suffered by T-Mobile, but will also be able to accommodate up to three (3) additional carriers and thus limit the need for up to 3 additional structures in the vicinity of the Subject Property.

23. There are no existing communications towers or structures that can accommodate co-location and remedy T-Mobile's significant gap in coverage.

24. The application materials submitted by Capital Telecom demonstrated T-Mobile's lack of wireless service coverage in the area intended to be served by the proposed tower pursuant to Miami-Dade County Code § 33-311(A)(3)(a)(i)(b).

25. Capital Telecom's application materials also incorporated technical information responsive to Miami-Dade County Code § 33-311(A)(3)(a)(ii).

26. Section 33-63.2 of the Miami-Dade County Code establishes performance criteria for wireless supported service facilities. The application materials established that the Proposed Facility met all of the setback, height, and landscaping performance criteria set forth in the Miami-Dade County Code.

27. Capital Telecom's application was set for hearing in front of the Community Zoning Appeals Board on April 14, 2016 and the staff issued its Staff Report on April 4, 2016. The Staff Report acknowledged that the application

demonstrated a lack of coverage in the area, the sufficiency of the information submitted by Capital Telecom, and the independent verification by staff of the information submitted.

28. The Staff report found the application compliant with the Code and recommended approval.

29. On April 14, 2016 the Community Zoning Appeals Board heard the application.

30. Capital Telecom presented its application, demonstrated its compliance with the objective performance criteria and the compatibility of the Proposed Tower with the existing area and presented uncontroverted evidence than no other site would remedy the existing coverage gap.

31. Two community members spoke in favor of the Proposed Tower. Eight community members spoke in opposition to the Proposed Tower.

32. None of the community members who spoke in opposition at the hearing disputed the evidence submitted by Capital Telecom.

33. None of the community members who spoke in opposition presented any evidence of any adverse impact of the Proposed Facility.

34. No member of the Board disputed the validity of the evidence presented by Capital Telecom.

35. The application was denied by the Board without prejudice on a 3-2 vote.

36. By letter dated April 28, 2016, attached as Exhibit A hereto, the County issued its formal written denial of the application, which states as the basis for denial

that the Application would not be compatible with the area and its development and would have an adverse impact upon the public interest and should be denied.

37. None of the County's conclusions upon which it based its denial are supported by substantial evidence in the written record.

38. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis."

39. This action is timely filed.

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) - Substantial Evidence)

40. Plaintiff incorporates by reference and realleges the foregoing factual allegations in paragraphs 1 through 39 as if fully set forth herein.

41. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

42. The Application with respect to the Proposed Facility satisfied all of the criteria set forth in the County's Code to install a wireless communications facility in the subject zone.

43. At the April 14, 2016 Community Zoning and Appeals Board meeting, Capital Telecom presented evidence regarding the need for the Proposed Facility, the

visual impact of the Proposed Facility, and otherwise complied with all County requirements.

44. At the hearing, no member of the Board disputed any of the evidence presented by Capital Telecom,

45. There is not substantial evidence in the written record to support the County's conclusion that the Proposed Facility will be incompatible with the area and its development.

46. There is not substantial evidence in the written record to support the County's conclusion that the Proposed Facility would have an adverse impact upon the public interest.

47. Consequently, the County's action is in violation of, and preempted by, Section 332(c)(7)(B)(iii) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the County to approve the Application for the Proposed Facility.

## COUNT II
### (Violation of 47 U.S.C. § 332(c)(7)(b)(i)(II) – Effective Prohibition)

48. Capital Telecom incorporates by reference and realleges the foregoing factual allegations in paragraphs 1 through 39 as if fully set forth herein.

49. Pursuant to 47 U.S.C. § 332(c)(7)(b)(i)(II), "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government of instrumentality thereof ... shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

50. There is a significant gap in personal wireless service coverage in the area of the County surrounding the Proposed Facility.

51. Capital Telecom investigated alternative sites in and around the area of the site for the Proposed Facility within which the wireless carriers determined that significant gaps exist and that a wireless communications facility must be located to remedy the significant gaps in reliable service for the wireless carriers.

52. There is no existing structure in or near the vicinity of the Proposed Facility that is both reasonably available and technologically feasible to remedy the significant gaps in personal wireless service in the area.

53. There is no dispute that there were no available alternative sites that would remedy the significant gaps in personal wireless service in the area.

54. The Proposed Facility is the least intrusive on the aesthetic values the County's Code seeks to serve.

55. The County's denial of the Application causes an effective prohibition of personal wireless service in the area surrounding the Proposed Facility.

56. Consequently, the County's denial of the Application is in violation of, and preempted by, Section 332(c)(7)(b)(i)(II) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the County to approve the Application for the Proposed Facility.

**WHEREFORE**, Capital Telecom demands judgment against the County as follows:

1. An expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2. An injunction ordering that the County grant the Application and thereby approve the Proposed Facility;

3. An injunction directing the County to issue all ancillary approvals and permits necessary for the construction of the Proposed Facility;

4. A judgment that the County's actions and decisions violated the Communications Act and are therefore void and invalid;

5. An award of Capital Telecom's costs, including reasonable attorneys' fees; and

7. Such other and further relief as the Court may deem just and proper.

Dated: May 31, 2016.

Respectfully submitted,

/s/ Mary Doty Solik
Mary Doty Solik (Florida Bar Number: 856479)
msolik@dotysoliklaw.com
Doty Solik Law
121 S. Orange Ave., Suite 1500
Orlando, FL 32801
Telephone: (407) 367-7868
Facsimile: (407) 377-6801
Attorney for Plaintiff Capital Telecom